## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL HILE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | 2:04cv1253 |
| v. | ) | **Electronic Filing** |
| | ) | |
| **INSTRON** | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

June 27, 2006

**I.    INTRODUCTION**

Daniel Hile ("Hile" or "Plaintiff") filed a complaint in this action alleging a violation of his rights under the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 621, *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. § 951 *et seq.* Plaintiff contends that his employment with Instron ("Instron" or "Defendant") was wrongly terminated because of his age.  Plaintiff is seeking back pay, front pay, and compensation for lost fringe benefits as well as compensatory damages for humiliation, embarrassment and loss of self esteem.  He is also requesting reasonable attorney's fees and liquidated damages.

After the close of discovery, Defendant filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In support of its motion, Defendant filed a memorandum of law and statement of undisputed material facts.  Plaintiff has responded, and the motion is now before the Court.

## II.   STATEMENT OF THE CASE

Instron[1] is a corporation in the business of selling and servicing materials and structural testing equipment and is located in Grove City, Pennsylvania. Declaration of Daniel D. Ewing, III, Appendix Exhibit A.  In July 1998, Instron purchased SATEC Systems, Inc. ("SATEC"). Plaintiff worked for SATEC since 1969 and was fifty-six (56) years old when the company was acquired by Instron on August 1, 1998.  Defendant's Statement of Material Undisputed Fact ("SMUF") ¶¶ 1 & 2.  While at SATEC, Plaintiff received reviews in 1985 and 1987 indicating his ability to work well with older model computers, but also indicating his difficulty working with newer computer models.  SMUF ¶¶ 29 & 30.  Upon Instron's acquisition of SATEC, Hile and other SATEC employees became Instron employees.  SMUF ¶ 2.  The SATEC employees were automatically placed at Instron without evaluation of their skill set.  The placement was designed to ensure that employees continued to earn a salary comparable to that which they earned at SATEC.  SMUF ¶ 6.  Plaintiff was employed by SATEC as a Field Service Engineer ("FSE") and was automatically placed as a Senior Field Service Engineer ("SFSE") with Instron. SMUF ¶ 3.

Instron informed employees that the terms of their employment would be reviewed on an annual basis.  SMUF ¶ 7.   During the first few years following the acquisition, all former SATEC employees continued to operate as an independent group, managed by Tony Purcell ("Purcell").  SMUF ¶ 8.  By 2001, SATEC was fully integrated into Instron's operations. *Id.*

---

[1]Instron Corporation is an industry leader in advancing material and components testing techniques. Its products are used to evaluate the mechanical and physical properties and performances of materials, structure, and components.  In addition to providing instrumentation, Instron also provides support services, engineering, training, and font-line support for all of its products, as well as for products manufactured by other companies in the material and components testing industry. Declaration of Daniel D. Ewing, III, October 14, 2005; Appendix Exhibit A.

Purcell left Instron and Sean Wright ("Wright") was hired to assume supervision of the FSEs, and SFSEs including Hile.  SMUF ¶ 16.

Wright supervised employees ranging in age from forty nine (49) to fifty-nine (59).[2] During his time with Instron, Wright accompanied each of his SFSEs and FSEs on service calls with clients.  SMUF ¶ 20.  During that time period, Wright commended Plaintiff for his work on older machines, but also noted that Hile's ability to install new machines was deficient, as were his basic skills with newer computers.  SMUF ¶¶ 21 & 22.  Plaintiff addressed his need for further training in the "Continuous Improvement" section of his 2002 performance appraisal.  He stated, "I am planning to retire when I am age sixty-two (62) in February 2004.  Everything is getting too complex for me to learn anything else."  SMUF ¶ 36.  Plaintiff acknowledged that Wright told him to get more training in February 2003, but he failed to do so.  SMUF ¶ 39.  As of January 2004, Plaintiff acknowledged that he never informed Wright he had obtained the additional training suggested in his 2002 evaluation.  Plaintiff asserts that he did not obtain further training because Wright never informed him of the specific skills areas he needed to strengthen. Plaintiff's Statement of Material Fact ("PSMF") ¶ 44.

On January 30, 2004, Wright met with Hile to review his 2003 performance evaluation. A decision was made by Wright's supervisor, John Durkin, ("Durkin") and Dan Ewing, ("Ewing"), Vice President of Human Resources, to reclassify Hile as a Field Service Engineer. Wright informed Hile of this decision and Hile abruptly left the meeting.  SMUF ¶ 53. ThoughWright attempted to resume the meeting, Hile refused to return, claiming that the meeting had ended.  SMUF ¶ 54; PSMF ¶ 54.  When informed that the meeting was not over and that he should return, Hile refused to do so. SMUF ¶ 54.

Ewing and Durkin, acting as decision-makers, determined that Plaintiff's conduct during the performance review constituted subordination.  SMUF ¶¶ 55 & 56.  On Saturday January 31,

---

[2] Plaintiff, age fifty-nine (59), was the oldest employee supervised by Wright during this period.

2004, Wright sent Plaintiff an email informing him that he would be "written-up" for insubordinate behavior and that a subsequent occurrence of insubordination would result in a one-week paid suspension.  SMUF ¶ 59.

On February 3, 2004, Wright noticed damage to Plaintiff's company owned vehicle. SMUF ¶ 60.  When questioned, Hile informed Wright that the car had been damaged one (1) month prior, and he intended to fix the damage himself.  Wright instructed Hile to report the damage to the vehicle within twenty-four (24) hours, but Hile failed to do so.  SMUF ¶ 66. Wright consulted Durkin and Ewing to determine if any action should be taken against Plaintiff. Durkin and Ewing independently agreed that Hile's failure to report the vehicle damage constituted a second occurrence of insubordination.  SMUF ¶¶ 67 & 68.  Durkin and Ewing suggested suspending Plaintiff for one-week as a result of the insubordination.  SMUF ¶ 70.

The third and final incident of insubordination occurred on February 6, 2004, when Wright requested that Hile meet with him so Wright could inform Hile of his one-week suspension.  SMUF ¶ 71.  Hile told Wright that he would be unable to meet him on Friday, as requested, but would meet Wright on Monday morning.  SMUF ¶¶ 73 & 75. Hile contends that both Friday and Monday were offered as options for meeting times, and he chose Monday. PSMF ¶ 73.  Wright asserts that he requested a Friday meeting, but Hile refused to meet him until Monday.  Wright then consulted Ewing and Durkin once again regarding Hile's conduct. Ewing and Durkin concluded that discharge was warranted based upon what they considered Hile's third incident of insubordination in an eight (8) day period, and such action was consistent with Instron's Disciplinary Action and Dismissals policy.  SMUF ¶ 79.  During these incidents, Durkin and Ewing had no reason to believe that Wright was treating Hile unfairly or differently because of his age.  SMUF ¶¶ 49, 57, 69 & 80.

Hile was informed of his discharge on February 9, 2004.  He was also told that his termination was not based upon performance, but was a result of his insubordination.  SMUF ¶¶ 82 & 83.  Following Plaintiff's discharge, three (3) new FSEs, all more than ten (10) years

younger than Hile, were hired.  Hile makes no claim that anyone at Instron ever made derogatory comments regarding age.  SMUF ¶ 86.  On March 29, 2004, Plaintiff filed a complaint of age discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  Plaintiff alleged that Wright and Durkin discriminated against him because of his age.  SUMF ¶ 87.  Plaintiff, however, does not allege discrimination on the part of Ewing.  SUMF ¶ 88.  The claims before the EEOC were dismissed and this action was filed.  Def. Motion for Summary Judgment ("DMSJ") ¶ 7.

### III.   STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  A summary judgment motion shall be denied where a disputed issue of fact is both genuine and material, *i.e.*, one on which a reasonable fact finder could base a verdict for the non-moving party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  *Anderson*, 477 U.S. at 248.  The court's consideration of the facts must be in the light favorable to the party opposing summary judgment, and all reasonable interferences from the facts must be drawn in favor of that party as well.  *Whiteland Woods, L.P. v. Township of W. Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999); *Tiggs Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponents must do more than simply show that there is some metaphysical doubt as to the material facts.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In the language of Rule 56, the nonmoving party must come forward with "specific facts showing that there is a

genuine issue for trial." Fed. R. Civ. P. 56(e).  When the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial" and summary judgment must be granted.  *Matsushita*, 475 U.S. at 578.


**IV.    DISCUSSION**

The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1).  A plaintiff can sustain a claim of discrimination under the ADEA by presenting either direct or circumstantial evidence of discrimination. *See Duffy v. Magic Paper Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).  Hile argues that Instron's reasons for his discharge are merely a pretext.  A pretext claim must be analyzed under the three steps of the *McDonnell Douglas* line of cases, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), which the Third Circuit applies to ADEA cases. *See e.g., Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995).[3]  Under this framework, Hile must first establish a *prima facie* case of age discrimination.  This is done if he shows that he:

    (1)    is a member of the protected class, i.e. at least 40 years of age;

    (2)    is qualified for the position;

    (3)    suffered an adverse employment decision; and

    (4)    in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination.

*Simpson v. Kay Jewelers*, 142 F.3d at 643-644 n. 5; *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897 (3d Cir. 1987).  Upon such a showing by Hile, the burden shifts to Instron to produce

---

[3]    There is no need to differentiate between Hile's ADEA and PHRA claims because, for our purposes, the same analysis is used for both. *See, e.g., Simpson v. Kay Jewelers*, 142 F.3d 639, 643-44 & n.4 (3d Cir. 1998); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth*, 609 A.2d 804, 805 (Pa. 1992).

evidence of a legitimate nondiscriminatory reason for the adverse decision. *Hicks*, 509 U.S. at 506-07.  Hile must then demonstrate that Instron's articulated reason was not the actual reason, but rather a pretext for discrimination. *Id*. at 507.

The Court finds that Plaintiff has established his *prima facie* case.  First, it is undisputed that Hile is a member of the protected class.  At the time of his termination, Hile was fifty-six (56) years old.  Second, Hile was qualified for his position when he became an FSE with Instron. Third, Hile was subject to an adverse employment action; Instron terminated his employment. Finally, Plaintiff has successfully shown that the action occurred under circumstances giving rise to an inference of discrimination.  *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.,* 789 F.2d 253, 257 (3d Cir. 1986).  Hile need not prove that other employees outside of his protected class were treated more favorably, or that he was replaced by someone outside the protected class to establish a *prima facie* case.  *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355-357 (3d Cir. 1999).

Instron contends it had a legitimate business purpose in terminating Hile, that being his insubordination. Having established a *prima facie* case, Hile must show that Instron's articulated reasons are merely a pretext for age discrimination. To show pretext, Hile must point to some evidence from which a fact finder could reasonably either:

(1)     disbelieve Instron's articulated legitimate reasons; or

(2)     believe that an invidious discriminatory reason was <u>more likely than not</u> a motivating or determinative cause of Hile's discharge.

*See Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994)(Emphasis added).

To show that discrimination was more likely than not a cause for the employer's action, the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir. 1997). For example, the plaintiff may show that the employer has previously discriminated

7

against her, that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class. *See Fuentes v. Perskie,* 32 F.3d at 765. *See also Simpson v. Kay Jewelers*, 142 F.3d at 644-645.

The Court finds that Hile cannot establish that the motive for his termination was merely a pretext for discrimination. There is no evidence that the decision makers responsible for Hile's termination harbored any age-based bias against him. Plaintiff's demotion was based upon negative performance reviews by his supervisor, which stated that Hile needed "additional skill development." Plaintiff acknowledged in his deposition that he attempted to improve his skills in only one area, but took no further action to improve his overall knowledge. R. 139-141.

While Hile excelled at working with older machines, his difficulties working with new equipment and technology were documented as early as 1985. In 1987, Plaintiff's first manager, Tony Purcell, noted Plaintiff's lack of comfort with new technology and working on new machines. Performance evaluations in 2002 and 2003, this time under Wright, mirrored earlier comments about the need for Hile to acquire new computer skills. SMUF ¶¶ 28-30. Wright gave Hile several indications that new skills were needed, however, Hile failed to improve his skills. Moreover, Hile's belief as to the validity of the criteria for the performance evaluations is not relevant, as the criteria set by Instron serves as the acceptable standard. *See Simpson v. Kay Jewelers*, 142 F.3d at 642. Hile is unable to show that he satisfied the required criteria, or that Instron failed to rely on its stated criteria.

Although Hile's past performance reviews were central to the decision to reassign him from Senior FSE to FSE, his termination was based specifically upon three (3) incidents of insubordination. While Hile's 2002 performance review resulted in an incident of insubordination, Instron did not rely on performance reviews as a basis for Hile's discharge. Because performance was not relevant to the decision to terminate him, Hile must demonstrate

8

that Instron's proffered reasons for termination are invalid. *Johnson v. Penske Truck Leasing Co.*, 949 F. Supp 1153, 1175-76 (D.N.J. 1996).

The three significant incidents of insubordination that resulted in Plaintiff's termination began on January 30, 2004, when Plaintiff walked out of a performance review evaluation and refused to return to the meeting when so requested by his supervisor.  Hile does not dispute leaving the meeting, however, he testified that he believed the meeting had ended.  Despite this claim however, Plaintiff admits that he refused to return to the meeting when asked to do so by his supervisor.  Hile Deposition pp182-184.

The second incident occurred on February 3, 2004, when Wright noticed damage to Plaintiff's company-owned vehicle.  SUMF ¶ 67.  Plaintiff had previously signed a copy of the company vehicle policy requiring that any damage be reported within twenty-four (24) hours. SMUF ¶ 62.  He failed to report this incident after Wright ordered him to do so. This was Hile's second vehicular infraction committed while employed by Instron. In December 2001, Hile was charged with driving under the influence while operating a company-owned vehicle. Hile did not receive severe disciplinary action for the incident.  SMUF ¶ 64.  Although Plaintiff claims he was unaware of company policy regarding damaged vehicles, he had previous experience with a damaged vehicle while working for Instron, and he signed a statement agreeing to the company policy regarding damage to company vehicles.  The evidence clearly shows that Hile knew or should have known the requirements of reporting damaged vehicles. Moreover, Plaintiff does not dispute the damage to the company vehicles or his failure to report the damage according to company policy.

The final incident of insubordination resulting in Plaintiff's dismissal involved discrepancies as to the time and date required for a meeting to review Plaintiff's performance evaluation.  Plaintiff claims two meeting days were available; however, Plaintiff acknowledges that Wright emphatically stated the need to meet on Friday.  Hile further acknowledges that he had time to meet Wright before the end of the work day.

9

Though Hile disagrees with some of the details regarding the above incidents, he does not dispute the core of the incidents leading to his dismissal. He acknowledges receipt of negative performance reviews from Wright, acknowledges that he damaged his company vehicle and failed to report the damage according to policy, and that he refused a request to return to his performance evaluation meeting with Wright.  SUMP ¶¶ 25, 54 & 60.

Instron's company policy lists "disobedience or insubordination" under "Reasons for Disciplinary Action or Dismissal," and "supervisory judgment" is exercised as to appropriate disciplinary response. *See* Defendant Exhibit C.  Wright reported each incident of insubordination to company decision-makers and followed all steps of the "Disciplinary Action Procedure" when terminating Plaintiff.  Pursuant to Instron's disciplinary guidelines, Hile's termination was procedurally valid. *Id.*

Hile contends that his termination was the result of age-based bias. SMF ¶¶ 87 & 88. Therefore, he "must show by direct evidence that decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision."  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 229 (1989).  Here, the ultimate decision-makers authorizing Hile's termination were Durkin and Ewing.  Hile, however, does not allege any personal or direct discrimination by Ewing and only alleges discrimination by Durkin due to his status as Wright's supervisor.  SMF ¶ 81.  Hile "carries the burden of persuasion" but has failed to offer compelling evidence suggesting that Durkin and Ewing terminated him based upon a "discriminatory animus," and not because of Hile's behavior, performance, and violations of company policy.  *See Price Waterhouse*, 490 U.S. at 229.  Plaintiff alleges no discrimination by Ewing, and offers no specific evidence or direct discrimination by Durkin, the actual decision makers in this instance. Further, Plaintiff alleges age discrimination by Wright, but fails to offer any material evidence suggesting a discriminatory animus by Wright.  Hile, therefore, has failed to direct this Court to any evidence from which a fact finder could reasonably either:

        (1)      disbelieve Instron's articulated legitimate reasons; or

      (2)      believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of his discharge.

## V.   CONCLUSION

The Court finds that there are no material facts in dispute, and Plaintiff is unable to show that age discrimination was a determinative factor in Defendant's decision to terminate him. Defendant's motion for summary judgment shall be granted.  An appropriate order will follow.

                         s/ David Stewart Cercone
                         David Stewart Cercone
                         United States District Judge

cc:    Neal A. Sanders, Esquire
       Dirk Beuth, Esquire
       Law Offices of Neal A. Sanders
       1924 N. Main Street Extension
       Butler, PA 16001

       Carole S. Katz, Esquire
       Beth M. Henke, Esquire
       Morgan Lewis & Bockius LLP
       One Oxford Centre, 32nd Floor
       Pittsburgh, PA 15219